**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOHN R. GLASSCOCK,                                    Case No. 1:15-cv-454

        Plaintiff,                                    Beckwith, J.
                                                      Bowman, M.J.
    v.

VILLAGE OF MT. ORAB, OHIO, et al.,

        Defendants.


**REPORT AND RECOMMENDATION**

Plaintiff, proceeding *pro se*, initiated this action on July 9, 2015 by paying the requisite filing fee and filing a complaint against twenty-three Defendants.  Pursuant to local practice, this case has been referred to the undersigned.

On March 4, 2016, the undersigned filed a Report and Recommendation on a motion to dismiss that had been filed by a group collectively identified by Plaintiff as the "Brown County Defendants." (Doc. 11).  In addition to granting that motion, the undersigned recommended the *sua sponte* dismissal of certain claims against other Defendants.  (Doc. 20). On April 20, 2016, the presiding district judge adopted that R&R in its entirety for the opinion of the Court.[1]  (Doc. 22).  Based on the Court's prior ruling, nine claims against two Defendants, Mt. Orab Police Officers George Baker and Ryan Gregory, remain.

On September 19, 2016, the two remaining Defendants filed a motion for judgment on the pleadings.  Plaintiff was granted not one, not two, but three separate

---

[1]Although the Court granted Plaintiff's motion for an extension of time in which to file objections to the R&R, no objections were filed.

motions for extensions of time to allow Plaintiff to file a response to Defendants' motion. Plaintiff was specifically advised in the Court's last order, dated November 14, 2016, that no further extensions would be granted.    Plaintiff has failed to file any timely response, and the Defendants' motion is now before the undersigned for initial review. For the following reasons, the motion should be GRANTED and this case should be dismissed in its entirety, with prejudice.

## I.  Background

Based on the standard of review applicable to the pending motion, the following facts have been taken solely from Plaintiff's forty-five page typed complaint.

Plaintiff identifies himself as a "senior citizen" who resides in the Village of Sardinia, Ohio, which is to the east of Mt. Orab.  (Doc. 1 at 4).   Plaintiff alleges that the Defendant Officers violated his constitutional rights during and subsequent to a traffic stop on July 10, 2013.  Plaintiff's only remaining claims are stated against the officers in their individual capacities.

Plaintiff alleges that on Sunday, June 9, 2013, he drove his vehicle to pick up Ms. Amber Mason, a casual acquaintance with a history of drug abuse.   (Doc. 1 at 9). Plaintiff alleges that Mason asked Plaintiff to hold  a sum of cash for her so that Mason would not be tempted to buy illicit drugs.  (Doc. 1 at 10).

After ordering take-out food in Mt. Orab, Plaintiff and Mason went to a nearby park to eat and talk.  En route back to Sardinia hours later, Plaintiff observed a Mt. Orab patrol car and a State highway patrol car near an intersection.  "At about this time plaintiff hit an awkward caution light that caused him to speed up slightly to avoid slamming on the brakes and coming to an abrupt stop" which he believes "must have aroused some sort of suspicion because of the older model automobile" that he was driving.  (Doc. 1 at 10).  Plaintiff stopped at a nearby Marathon Station.  Shortly after

leaving the gas station, Plaintiff was pulled over by the two Defendants, Officers Baker and Gregory.

Officer Baker approached first, shining his flashlight in the car and asking why Plaintiff and Ms. Mason were in Mt. Orab at that hour. Plaintiff allegedly responded: "Not to buy alcohol, we came here to get something to eat." (Doc. 1 at 11). Baker told Plaintiff that he had been pulled over "because you forgot to use a turn signal back there." (Doc. 1 at 11-12). After requesting identification from both Plaintiff and his passenger, the officers discovered a holder on Ms. Mason for outstanding drug charges, and took her into custody. They asked Plaintiff for consent to search his vehicle for drugs, but Plaintiff consented only to a search of the passenger area of his vehicle.

Plaintiff alleges he overheard the officers "planning to fix plaintiff for refusing to give consent [to search the entire vehicle], by both of them agreeing to claim that plaintiff's eyes looked a little glossy" as an excuse to get plaintiff out of his car and administer sobriety tests. (Doc. 1 at 14). Plaintiff complied with the request to exit his vehicle and but admittedly failed several sobriety tests, allegedly due to sharp sciatica pains, other health conditions, and age. The officers arrested Plaintiff and charged him with operating a motor vehicle while under the influence of alcohol or drugs ("OMVI") in addition to the turn signal violation.

Plaintiff alleges that the officers placed him in handcuffs and searched his pocket after asking if he had any sharp objects on his person. (Doc. 1 at 15). From his pocket, Officer Baker retrieved cash in excess of six hundred dollars. (*Id.* at 16). Plaintiff alleges that the officers put him in a "contorted and extremely painful" position in the back of Baker's patrol car, while "sarcastically informing him that he would not be that uncomfortable if he sat a certain way." (Doc. 1, ¶35, PageID 16). Plaintiff alleges that because the front seat was pushed "way back," Plaintiff was forced to sit sideways "in a

3

contorted bent over position without being able to fully straighten his back and feet out which almost immediately caused his hips to ache and his already sore legs to cramp and throb painfully." (*Id.*) Plaintiff alleges that he remained uncomfortably positioned for 15-20 minutes while Baker conducted a vehicle search, allegedly damaging Plaintiff's car in the process.[2] (Doc. 1, ¶ 36 at PageID 16).

After the tow truck arrived, Baker began driving Plaintiff to the police station. Plaintiff requested transport to the hospital due to chest pains, but alleges Officer Baker "did not seem overly concerned" and traveled at a normal rate of speed in the wrong direction, informing Plaintiff he would turn around "at Klein Road which he did," before taking him to the Mt. Orab Emergency Center at 1:43 a.m. (Doc. 1, ¶¶ 37-38 at PageID 16-17). Plaintiff provided a urine sample and consented to a blood draw. Lab tests were negative for drugs or alcohol. (Doc. 1 at 18).

Plaintiff was arraigned on July 25, 2013 in Mayor's Court in Mt. Orab, where he entered a not guilty plea. Plaintiff declined an offer to reduce the OMVI charge to a charge of reckless operation of a vehicle in exchange for a plea. (Doc. 1 at 20). Plaintiff alleges that Baker's "perjured and fraudulent affidavit of probable cause filed in conjunction with his perjured charges is fatally defective on its face to support a finding of probable cause for his OMVI charge against plaintiff." (Doc. 1 at 22). The magistrate allegedly directed Plaintiff to sign a speedy trial waiver over Plaintiff's objection, in conjunction with a transfer of the case to the Brown County Municipal Court. Plaintiff alleges Officer Baker forced him to sign the waiver as directed.

---

[2] Plaintiff alleges that upon completion of the search, Officer Baker "informed plaintiff that his [car's] fan shroud was hanging down on the ground and that plaintiff must have hit something earlier causing it to dislodge." (Doc. 1, ¶36 at PageID 16). Plaintiff denies hitting anything and apparently believes the damaged fan shroud was a casualty of Defendant Baker's roadside search.

In Brown County Municipal Court, the case was continued due to a delay in receipt of the blood test results.  (Doc. 1 at 23).  Plaintiff filed several motions asserting his speedy trial rights including at least two motions seeking dismissal of charges against him based upon the alleged denial of his speedy trial rights.  (Doc. 1 at 23).  On September 16, 2013, Plaintiff was informed the OMVI charge was being dismissed, apparently based upon negative lab test results.   The assistant Brown County prosecutor offered to impose only court costs if plaintiff would plead guilty to the lesser turn signal charge, but Plaintiff declined.  (Doc. 1 at 23).   The case was thereafter transferred back to Mayor's Court.

Plaintiff filed another motion to dismiss based upon the alleged speedy trial violation, which was denied based upon his prior written waiver.  (Doc. 1 at 25).  On the trial date of October 7, 2013, Plaintiff alleges that he was very ill and spent most of the day in the emergency room.  On October 8, 2013, he received notice that he had been convicted in absentia and ordered to pay a fine of forty-five dollars, plus court costs.

Plaintiff alleges that he could not afford to pay the fine but did not appeal based upon his concern that any appeal would be "indefinitely shelved and any action to cause the disqualification of [the judge] would cause more delay."  (Doc. 1 at 27).  When Plaintiff failed to pay the fine, a block was placed against his driving privileges, and he was notified that he would be charged a reinstatement fee to remove the block after the fine was paid.  (Doc. 1 at 27).

Plaintiff alleges that all Defendants acted "under color of law," and in "conspiracy" to "deprive plaintiff and others in his situation of Constitutional rights."  (Doc. 1 at 29).  For relief, Plaintiff seeks monetary damages, among other damages "to be set forth fully at trial."  (Doc. 1 at 30-31).

Following this Court's prior dismissal of multiple claims and Defendants, the following nine claims remain against the two police officers: (1) Violation of First Amendment rights (¶¶98-100); (2) Unreasonable Seizure and Search [of Person] in violation of the Fourth Amendment (¶¶105-109); (3) Unreasonable Search of Automobile (¶¶110-113); (4) Excessive Use of Force (¶¶ 114-117); (5) Unreasonable Blood Draw (¶¶118-121); (6) Deliberate Fabrication of False Evidence (¶¶122-128); (7) Fourth Amendment Malicious Prosecution (¶¶129-133); (8) Denial of Sixth Amendment Speedy Trial Rights (¶¶143-146); (9) Deliberate Infliction of Emotional Distress (¶¶147-149). All of the claims are brought under 42 U.S.C. § 1983.

## II. Standard of Review

The standard of review for a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the claims. The court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true. *See Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974). A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB*, 135 F.3d at 406 (internal citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations

omitted);  *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citations omitted).

### III.  Analysis

The Court's prior R&R pointed out that only the Brown County Defendants (and not the two Defendants identified herein) had moved to dismiss the complaint.  While the undersigned recommended the *sua sponte* dismissal of a number of additional claims and Defendants, the Court declined to consider every conceivable argument in favor of *sua sponte* dismissal.  Thus, the undersigned stated "no opinion on whether any claim not specifically discussed herein would survive a dispositive motion, concluding only on the Court's preliminary review that they are not so patently deficient and legally frivolous as to be subject to immediate *sua sponte* dismissal under *Apple v. Glenn*."  (Doc. 20 at 19 n.7, emphasis added).  In their present motion, the Defendant officers raise new arguments in favor of dismissal of all remaining claims.  Having now had the benefit of briefing to consider those arguments, the Court recommends dismissal of all claims on the grounds asserted in Defendants' unopposed motion.

Each of the nine claims remaining against the two officers will be considered *in seriatim*.  In addition to concluding that each of those claims fails on the merits based upon the arguments presented by the Defendants, the undersigned agrees that the two officers are entitled to qualified immunity on all claims.

### A.  First Amendment Claim

In his Third Cause of Action, Plaintiff alleges that after the two officers discovered Ms. Mason's outstanding drug warrant, the Defendants "acted on their unwarranted

hunch that Plaintiff's automobile should be searched for drugs because of his association with his passenger.  When plaintiff exercised his Fourth Amendment right to say no and refused to consent….they retaliated against him as fully set forth herein and deprived him of his rights to freely speak and associate with whomever he pleased for lawful purposes, thereby violating his rights of free speech and association secured to him under the First Amendment."  (Doc. 1, ¶ 99, PageID 32-33).

In order to state a claim for retaliation, a plaintiff must plead factual allegations to establish that: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Fritz v. Charter Township of Cormstock*, 592 F.3d 718, 723 (6th Cir. 2010) (quoting *Mezibov v. Allen,* 411 F.3d 712, 717 (6th Cir.2005) (additional internal citation omitted)).

Plaintiff's allegations appear to allege that the Defendants "retaliated" against Plaintiff based upon his failure to consent to the search of his entire vehicle, instead limiting his consent to the passenger area occupied by Ms. Mason prior to her arrest. Both Plaintiff's right to associate with Ms. Mason and his right to decline a voluntary search of his vehicle were constitutionally protected actions, at least arguably sufficient to plead the first component of Plaintiff's retaliation claim.  However, Defendants persuasively argue that the complaint fails to plead any factual allegations that would satisfy the second or third components of a constitutional retaliation claim: adverse action that would deter him from continuing to engage in the protected conduct, or that was motivated by his protected conduct.

The "adverse action" allegedly taken by Defendants is not clear from the complaint.  Plaintiff appears to allege that Mason's arrest was in retaliation for Plaintiff's

refusal to consent to the vehicle search, but as previously discussed in a prior R&R, Plaintiff lacks standing to assert any possible claim by Ms. Mason for unlawful arrest. In addition, Plaintiff's own allegations admit that Ms. Mason was detained pursuant to the discovery of outstanding drug charges <u>before</u> the officers sought Plaintiff's consent to search his vehicle. Once Ms. Mason was arrested, Plaintiff had no First Amendment right to continue to accompany or "associate" with her in the back of the patrol car.

This Court has already ruled that Plaintiff may not challenge the validity of the traffic stop for failure to use his turn signal. Plaintiff did not appeal his conviction for that traffic violation, and his time for such appeal is long expired. "Because Plaintiff is asking this Court to sit in direct review of what is an unappealed state court conviction, the *Rooker-Feldman* doctrine squarely prohibits Plaintiff's claims and this Court's jurisdiction." (Doc. 20 at 11).

> In the prior R&R, the Court further held:
>
> Based upon Plaintiff's unappealed conviction for failing to use his turn signal, an objectively valid basis for a traffic stop, his §1983 claim that officers lacked probable cause for the stop (or were motivated by malice or ill intent) fails to state a claim as a matter of law.
>
> Plaintiff's second §1983 claim alleges that the two officers violated his Fourth Amendment rights by asking for his and his passenger's documentation during the stop. Plaintiff cannot represent his passenger, and his claim that the officers' request for his own documentation during a legitimate traffic stop is legally frivolous. *See Rodriguez v. United States*, 135 S. Ct. 1609 (2015) (affirming that questioning passenger on an unrelated investigation that does not measurably lengthen roadside detention is constitutional, holding that inquiries incident to a traffic stop typically involve checking the driver's license, determining whether outstanding warrants exist against the driver, and inspecting the automobile's registration and proof of insurance).

(Doc. 20 at 20-21).

Similarly, as a matter of law this Court cannot find that during the course of the lawful traffic stop, the Defendants' request that Plaintiff consent to a search of his

vehicle and/or that he exit his vehicle and submit to sobriety tests were somehow unconstitutional "adverse actions."   In short, this Court cannot speculate or draw any inference that the two officers took *any* unconstitutional "adverse action" sufficient to state a "retaliation" claim based on Plaintiff's conclusory allegations.  *Accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (mere conclusions are not entitled to the assumption of truth where not supported by factual allegations).

### B. Unreasonable Search and Seizure Claims (Fifth and Sixth Causes of Action)

Defendants are also entitled to judgment on the pleadings on Plaintiff's two related Fourth Amendment claims.   Both claims allege that the Defendant Officers violated his right to be protected against an unreasonable search and seizure during the traffic stop.   In his Fifth Cause of Action, Plaintiff alleges that "Baker and Gregory ordered plaintiff from his car for the express purpose of manufacturing and fabricating evidence against him and then invalidly charged him with operating a motor vehicle while under the influence of a drug of abuse, in violation of plaintiff's right to be free from seizures without probable cause secured to him under the reasonableness requirements of the Fourth Amendment."  (Doc. 1, ¶ 107, PageID 34).   Apparently, Plaintiff believes that the officers' mere request that he submit to sobriety tests (which he failed) was constitutionally unreasonable and impermissible.

However, based upon Plaintiff's allegations, the Defendants' request that Plaintiff exit his vehicle and submit to sobriety tests did not violate any established constitutional standard.   Plaintiff was lawfully stopped for a traffic violation for which he was later convicted.   He admits in his complaint that while driving, he "hit an awkward caution light that caused him to speed up slightly to avoid slamming on the brakes and coming to an abrupt stop… This must have aroused some sort of suspicion because of the

older model automobile plaintiff was driving." (Doc. 1 at 10) When told he'd been stopped for failing to use a turn signal, he replied "Don't remember that," and Mason added, "Yeah John you must have forgot." (Doc. 1 at 12). When asked why they were in Mt. Orab at so late an hour, Plaintiff quickly replied, "Not to buy alcohol, we came here to get something to eat." (Doc. 1 at 11). Plaintiff discusses Defendant Baker's affidavit that Plaintiff had bloodshot and/or glassy eyes, which Plaintiff alleges was a false statement, and Defendant Gregory's similar statement to Mason that his "eyes looked a little glossy and that they were going to take [Plaintiff] in for a urine test [and] if he tested negative he would be released, if not, one more drug user would be off the streets…." (*Id.* at 14, 22). While Plaintiff maintains that the officers made "perjured" statements regarding the appearance of his eyes,"[3] Plaintiff's admittedly "awkward" speeding up while driving, violation of the turn signal ordinance, lateness of the hour, statement to the officers about not being there to purchase alcohol, and the discovery of a holder against Plaintiff's passenger for outstanding drug charges, all support the objective reasonableness of asking Plaintiff to exit his vehicle and submit to sobriety tests. The Supreme Court has held that once a motor vehicle has been lawfully stopped for a traffic violation, police may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures. *Pennsylvania v. Mimms*, 434 U.S. 106 111 (1977). In light of the totality of the circumstances alleged in the complaint, Defendants' articulated suspicion that Plaintiff was driving under the influence of drugs and/or alcohol and request that he submit to sobriety tests was objectively reasonable and did not violate the Fourth Amendment.

---

[3]Plaintiff has attached Defendant Baker's Probable Cause Affidavit to his complaint. (Doc. 1 at 44). Curiously, he alternatively argues that a number of medical conditions unrelated to sobriety could cause an individual to have the appearance of glassy eyes.

Only after Plaintiff failed all tests was he placed under arrest for suspicion of driving under the influence. Based on the same totality of circumstances, with the additional evidence of the failed sobriety tests, it was objectively reasonable for Defendants to charge Plaintiff with OMVI as well as the turn signal violation. Plaintiff alleges that "the subsequent search of plaintiff's pocket conducted by Baker and Gregory after his invalid seizure was unwarranted and in violation of plaintiff's rights secured under the Fourth Amendment." (*Id.* at ¶108). However, such a search of Plaintiff's person for sharp objects or weapons was lawful as a search incident to his arrest. *Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that "a lawful postarrest search of the person would not be rendered invalid by the fact that it was not motivated by the officer-safety concern that justifies such searches.")

For similar reasons, Defendants are entitled to judgment on Plaintiff's Sixth Cause of action, in which Plaintiff alleges that the two officers unreasonably searched his automobile without his consent under the "guise" of a "valid inventory search incident to a drug related driving infraction." (Doc. 1 at ¶111, PageID 34). The search of the vehicle was also objectively reasonable. Because Ms. Mason had been taken into custody pursuant to a holder on drug charges, and Plaintiff himself had been charged with OMVI, no one remained who lawfully could drive Plaintiff's vehicle, and a tow was required. Under established case law, the vehicle was lawfully taken into custody as part of law enforcement's community caretaking role. *South Dakota v. Opperman*, 428 U.S. 364, 368-369 (1976). The inventory search of a lawfully impounded vehicle does not violate the Fourth Amendment when performed in accordance with standard police procedures, and when the evidence does not demonstrate that the procedures involved are merely a pretext for an evidentiary search of the impounded vehicle. *See also Whren*, 517 U.S. at 812-813. On the facts as

alleged, the search  - in which no contraband was discovered and no evidence was obtained  - is presumed to have been valid and lawful.

### C. Excessive Use of Force Claim

The Defendants are also entitled to judgment on the pleadings on Plaintiff's claim that the officers violated the Fourth Amendment through their excessive use of force in the course of the arrest.  Plaintiff's complaint labels this claim as his Seventh Cause of Action, and alleges that "any force, even verbal commands, was excessive" and violated Plaintiff's Forth Amendment right to be free from excessive force based upon the "totality of circumstances."  (Doc. 1 at ¶116, PageID 35).   Plaintiff cites his "advanced age" and alleges that the officers "should have realized that their conduct could have adverse effects on plaintiff's well-being." (*Id.*)  He complains that the Officer Baker "willfully chose to ignore [his] infirmities and illnesses when plaintiff informed him of their existence," resulting in Plaintiff's "imminent fear and apprehension of physical violence."  (*Id.*)   He alleges force that was "brutal and excessive to the point that plaintiff feared loss of life and required hospitalization…."  (*Id.*)

Plaintiff's conclusory allegations fail to state any facts to support his excessive use of force claim.  Contrary to Plaintiff's belief, Defendants' spoken words during the course of the traffic stop and subsequent arrest cannot constitute an "excessive use of force" in violation of the Fourth Amendment.   The only physical force alleged by Plaintiff is that upon his arrest, the officers secured him by placing him in handcuffs in the back of their patrol car.   Although Plaintiff alleges that he was forced to sit in the back of the patrol car in a "contorted and extremely painful" position, Plaintiff does not allege that he ever complained of his discomfort, nor is there any evidence that the handcuffs were deliberately made to be overly tight, or that Plaintiff suffered bruising or any injury whatsoever from the very minimal force employed by the officers during the arrest.

13

When Plaintiff complained of chest pain during transport, Officer Baker transported him to the hospital for medical treatment, where he was later released with a recommendation that he follow up with a physician for diabetes and chest pain.   Under all established Fourth Amendment standards, the minimal use of force alleged during the course of the arrest was objectively reasonable.   *See Graham v. Connor*, 490 U.S. 386, 395-396 (1989).

### D.  Unreasonable Blood Draw Claim

Defendants are additionally entitled to judgment on the pleadings concerning Plaintiff's Eighth Cause of Action, which Plaintiff describes as an "unreasonable blood draw" once he arrived at the hospital for treatment of his chest pains.  Plaintiff alleges that a blood draw "without a warrant supported by probable cause" violates the Fourth Amendment.  (Doc. 1 at ¶119, PageID 35-36).  He further alleges that his "consent to the drawing of his blood was coerced and not a free will choice."  (*Id.*)

As Defendants point out, only Defendant Baker took Plaintiff to the hospital, so Defendant Gregory is entitled to judgment on the pleadings because he was not involved in the blood draw.  However, it is clear that Defendant Baker is also entitled to judgment on this claim because under Ohio's implied-consent statute, O.R.C. §4511.191, "[a]ny person who operates a vehicle…upon a highway or any public or private property used by the public for vehicular travel or parking within this state…shall be deemed to have given consent to a chemical test or tests of the person's whole blood, blood serum or plasma…to determine the alcohol…content of the person's whole blood, blood serum or plasma…if arrested for a violation of …section 4511.19…, section 4511.194…, or a substantially equivalent municipal ordinance, or a municipal OVI ordinance."  O.R.C. §4511.191(A)(2).  Based on the allegations set forth in the complaint, Plaintiff consented to the blood and urine tests.   Only now does he allege

that he was "coerced" by threat of the automatic suspension of his driving privileges. However, Officer Baker complied with Ohio law and constitutional requirements by informing Plaintiff that refusal to provide a urine and/or blood sample would result in such an automatic suspension, pursuant to O.R.C. §4511.19-192. Plaintiff's contention that his consent was invalid and that Officer Baker violated his Fourth Amendment rights by somehow coercing him to consent, merely by accurately informing him of Ohio law, is wholly without merit.

### E. Deliberate Fabrication of False Evidence and Malicious Prosecution

For reasons similar to those previously set forth, Defendants are entitled to judgment on the pleadings on Plaintiff's Ninth and Tenth Causes of Action, stated in the complaint as the "Deliberate Fabrication of False Evidence" and "Malicious Prosecution." To demonstrate the first claim, Plaintiff's allegations must show that the police officers knowingly fabricated evidence, and that a reasonable likelihood exists that the false evidence would have affected a jury's decision. *France v. Lucas*, 836 F.3d 612 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006)). "To succeed on a malicious prosecution claim, a plaintiff must prove: (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *France v. Lucas*, 836 F.3d at 625 (citing *Sules v. Anderson*, 625 F.3d 294, 208-309 (6th Cir. 2010).

Plaintiff generally complains in support of both claims that he was targeted by the two officers due to his lower economic status, but this Court has previously rejected Plaintiff's claims that such a "class" is protected under constitutional standards. (Doc. 20 at 17). It is worth repeating that for the reasons previously discussed, Plaintiff may

not attack the validity of his unappealed conviction for the failure to signal traffic violation.  Therefore, both claims are presumed to rest on the fact that the Defendants cited Plaintiff for OMVI in addition to the turn signal violation.  However, the OMVI charge was later dismissed, prior to Plaintiff's trial on the lesser charge, after the court's receipt of negative lab tests.

With respect to his fabrication of evidence claim, Plaintiff alleges that the actions of both officers against Plaintiff were taken "for the purpose of procuring false and fraudulent evidence against plaintiff," and that Defendant Baker's "subsequent false swearing to the truthfulness of the same, constituted a willful fraud…."  (Doc. 1 at ¶124, PageID 36).  He alleges that the officers' actions "were for the unlawful and express purpose of providing funds for the aforesaid mayor's court…."  (*Id.* at ¶126).  Plaintiff claims that he was "deprived of his right not to be prosecuted except upon probable cause truthfully sworn to and his right not to be deprived of his property except by due process of law…." (*Id.* at ¶127, PageID 37).  For the reasons discussed, and because Plaintiff's conclusory allegations are devoid of any factual support, Defendants are entitled to judgment.  *Iqbal*, 556 U.S. at 678-679.

The same result is obtained concerning Plaintiff's malicious prosecution claim.  Plaintiff argues that Baker and Gregory (along with many other previously dismissed Defendants) "require[ed] him to make repeated court appearances without probable cause…."  (Doc. 1 at ¶132).  However, it was not the Defendants but the respective Mt. Orab and Brown County judicial officials (all of whom were previously dismissed) who set the court dates about which Plaintiff complains.  Moreover, the allegations in Plaintiff's complaint establish the existence of probable cause for the actions taken by the officers in charging Plaintiff with OMVI and for failure to use his turn signal.  Plaintiff fails to allege any facts that would explain how either Defendant Officer "made,

influenced, or participated in the decision to prosecute."   Last, apart from the "initial seizure" through his arrest, which courts have held is insufficient to support a malicious prosecution claim, Plaintiff does not allege and cannot show that he faced any deprivation of his liberty as a result of the alleged "malicious prosecution" of the later dismissed OMVI charge.

### F.  Denial of Sixth Amendment Speedy Trial Rights

Plaintiff's designated thirteenth cause of action, stated as a denial of his Sixth Amendment right to a speedy trial, also fails as a matter of law based upon the allegations in the complaint.   Like Plaintiff's malicious prosecution claim, Plaintiff's speedy trial claim appears primarily aimed at a previously dismissed Defendant, Magistrate Potts, who allegedly directed Plaintiff to sign a speedy trial waiver form in conjunction with the transfer of Plaintiff's case to Brown County.   (Doc. 1 at ¶144, PageID 39).  According to the complaint, it was Magistrate Potts who informed Plaintiff that his case would be transferred to Brown County Municipal Court (based upon Plaintiff's contention that the Mayor's Court lacked jurisdiction) but that he would need to sign a speedy trial waiver.  (Doc. 1 at 20).  Plaintiff initially altered the court's speedy trial waiver form, but Defendant Baker allegedly instructed Plaintiff that was not permissible.  (*Id.*)  Plaintiff then signed a "clean" version of the same form, allegedly under the "stigma of threat and coercion."[4]   (*Id.*)  In the course of the proceedings, Plaintiff alleges three different judicial officers violated his rights by either ignoring or denying his motions to dismiss the charges against him based upon the alleged violation of his speedy trial rights and/or the "coerced" written waiver. (*Id.* at ¶145).

---

[4]Even if Defendant Baker erred by instructing Plaintiff to sign a "clean" form, he would be entitled to qualified immunity.

Defendants point out that although Plaintiff does not specify the precise length of any delay, Plaintiff was arrested on July 10, 2013 and was convicted of the left turn signal violation on October 7, 2013, a period of 89 days. Ohio law specifically provides for misdemeanor traffic charges, including an OMVI charge, to be brought within a 90 day period. *See* O.R.C. §2945.71.

The undersigned previously dismissed Plaintiff's speedy trial claim against all judicial officers on the basis of immunity. The speedy trial claim does not implicate Defendant Gregory at all, and the Mt. Orab and Brown County courts' alleged refusal to grant Plaintiff's multiple motions to dismiss is conduct that cannot be attributed to Defendant Baker. The state court denied Plaintiff's motion to dismiss on speedy trial grounds based upon his written waiver. Plaintiff's failure to appeal his conviction is dispositive of the only allegation against Defendant Baker, which challenges the same waiver. Therefore, Defendant Baker is entitled to judgment as a matter of law on Plaintiff's speedy trial claim.

### G. Deliberate Infliction of Emotional Distress

Plaintiff's last remaining claim against the Defendant Officers is his claim of "deliberate infliction of emotional distress." Defendants are unquestionably entitled to judgment as a matter of law on this claim, because Plaintiff's allegations again fail to satisfy the *Iqbal* standard. This Court previously wrote of the same claim:

> Plaintiff's fourteenth claim, for intentional infliction of emotional distress, is subject to *sua sponte* dismissal against all but the two police officer Defendants because the allegations fall short of the type of extreme and outrageous conduct that is required under Ohio law. In addition, the Mt. Orab Defendants are immune in their official capacity because
>
> > Ohio law is clear that the Township is immune from intentional tort claims. The Ohio Supreme Court held there is no exception to a political subdivision's immunity for intentional infliction of emotional distress. *Wilson v. Stark Cty. Dept. of Human Serv.,* 70 Ohio St.3d

450, 452, 639 N.E.2d 105 (Ohio 1994); *Chesher v. Neyer,* 392
F.Supp.2d 939, 958 (S.D.Ohio 2005).

*Becker v. Bd. of Trustees Clearcreek Twp., Ohio*, No. 3:05CV00360, 2008
WL 4449375, at *12 (S.D. Ohio Sept. 30, 2008).

(Doc. 20 at 22; *see also id.* at 17).

Having more closely reviewed all allegations against the two Defendant Officers in the context of the pending motion, as more fully discussed above, it is clear that the allegations against the last two Defendants also fall short of the type of extreme and outrageous conduct that is required under Ohio law.  As the Defendant Officers point out, Plaintiff's allegations indiscriminately lump together all "Defendants" without differentiation, alleging in Plaintiff's usual conclusory fashion that all actions by all Defendants were "undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others," and "were rooted in an abuse of power or authority, and….undertaken with the intent to, or in reckless disregard of the probability that their lawless misconduct would cause plaintiff to suffer from severe emotional distress…." (Doc. 1, ¶148 at PageID 40).  Absent any factual support, such conclusory allegations cannot withstand Defendants' motion.  In addition, Ohio's Political Subdivision Tort Liability Act grants immunity to the officers to the extent that their actions were taken in connection with their law enforcement duties and were not "manifestly outside the scope" of those duties or "with malicious purpose, in bad faith, or in a wanton and reckless manner."  Ohio Rev. Code §2744.03(A).  *See Smith v. City of Wyoming*, 821 F.3d 697, 706 (6th Cir. 2016).

### H.  Qualified Immunity: An Alternative Basis for Dismissal

As discussed above, Defendants are entitled to judgment on the pleadings based upon the failure of Plaintiff's complaint to state any claim.  Alternatively, the undersigned concludes that both officers are entitled to qualified immunity on all nine of the

referenced claims brought against them in their individual capacities, for the reasons generally discussed in Defendants' memorandum in support of their motion.  (Doc. 28 at pp. 28-36).  In determining whether the officers are entitled to this defense, this Court must determine: (1) whether the facts that the plaintiff has alleged "make out a violation of a constitutional right," and (2) whether the right at issue was "clearly established" at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)(internal quotation and citation omitted).  For all of the reasons previously discussed, the allegations in Plaintiff's complaint fail to allege either element.

**IV. Conclusion and Recommendations**

For the reasons stated herein, **IT IS RECOMMENDED THAT:**

All remaining claims against Defendants Officers Baker and Gregory should be dismissed with prejudice, and this case should be CLOSED.


*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHN R. GLASSCOCK,                                    Case No. 1:15-cv-454

       Plaintiff,                                   Beckwith, J.
                                                      Bowman, M.J.
    v.


VILLAGE OF MT. ORAB, OHIO, et al.,

       Defendants.


### NOTICE


      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21